**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: Pizzeria Management III LLC, | ) | Case No. 25-11334-jps |
| | ) | |
| Debtor in Possession. | ) | Chapter 11, Subchapter V |
| | ) | |
| | ) | Judge Jessica E. Price Smith |
| | ) | |

## DEBTOR'S PLAN OF REPRGANIZATION

This Plan of Reorganization is filed by Pizzeria Management III LLC, Debtor in

Possession, under Subchapter V of Chapter 11 of the U.S. Bankruptcy Code.

## ARTICLE I

## BACKGROUND INFORMATION

### Description and History of the Debtor's Business

The Debtor is a limited liability company organized under the laws of the State of Ohio.

All of the membership interests in the limited liability company are owned by Jason J. Dicks,

who is also a debtor in his own pending Chapter 11 case filed under Chapter 11, Subchapter V of

the U.S. Bankruptcy Code in the Bankruptcy Court for this District at Case No. 25-11336. The

Debtor operates a restaurant and tavern at 11110 Kinsman Road in Newbury Ohio. Jason J. Dicks

manages the Debtor's restaurant operations, and is the individual owner of a franchise agreement

with Zeppe's Tavern Franchise LLC ("Zeppe's).

### Overview of the Debtor's Financial Structure

The Debtor has loan agreements, license agreements, and related documents as described

below:

1

**(a) Debtor's Financing Agreements with Joseph Ciresi and Cassie Ciresi**

On February 23, 2023, the Debtor and Jason J. Dicks jointly signed a Promissory Note in favor of Joseph Ciresi and Cassie Ciresi in the original principal amount of $325,000, which was referenced in a Membership Interest Purchase Agreement also dated February 23, 2023 under which Mr. Dicks purchased the membership interests of the Debtor. The Debtor's records indicate that $314,257.65 remained due and owing under the Note on the Petition Date. Also on February 23, 2023, the Debtor and Mr. Dicks executed a Security Agreement in favor of Joseph Ciresi. A search of the records maintained by the Ohio Secretary of State does not disclose any recorded documents perfecting the security interest. On or about February 23, 2023, Mr. Dicks, but not the Debtor, entered into a franchise agreement with Zeppe's, which is owned by Joseph and Cassie Ciresi.

**(b) Debtor's Financing Arrangements with WebBank (Toast)**

The Debtor is a party to an agreement with WebBank, d/b/a "Toast" an online reservation system which also provides restaurant financing. WebBank was owed approximately was owed approximately $36,070 on the Petition Date. WebBank filed a UCC financing statement with the Ohio Secretary of State on September 13, 2023.

**(c) The Debtor's Financing Arrangements with iPlan Group FBO Christian Carson**

The Debtor, together with Mr. Dicks, borrowed money from Christian Carson, through Mr. Carson's self-directed IRA prior to the Petition Date. Mr. Carson was owed approximately $117,000 as of the Petition Date. iPlan Group, the administrator of Mr. Carson's IRA, filed a UCC financing statement with the Ohio Secretary of State on March 14, 2025.

**(d) The Debtor's Financing Arrangements with Rewards Network**

The Debtor borrowed money from Rewards Network, and online operator of a

program that provides rewards points for its members when they use approved credit cards to purchase restaurant meals. Rewards Network was owed approximately $108,275 on the Petition Date. Rewards Network filed a UCC financing with the Ohio Secretary of State on March 26, 2025.

**(e) The Debtor's Unsecured Financing**

The Debtor owed approximately $23,140.90 to various trade creditors as of the Petition Date. In addition, the Debtor owed approximately $26,983 to employees for wages incurred pre-petition, all of which was paid in the ordinary course of business pursuant to the Orders of the bankruptcy Court.

## Description of Events Leading to Bankruptcy Filing

Zeppe's threatened to terminate the franchise agreement held by Mr. Dicks and to take legal action repossess the Debtor's business assets if the $325,000 promissory note was not repaid in full prior to April 1, 2025. Negotiations were unproductive. The Debtor and Mr. Dicks each filed bankruptcy petitions on March 31, 2025 to preserve the business assets for the benefit of all creditors and parties in interest and to ensure that business operations continued without interference from Zeppe's or its owners.

## Description of Events During Bankruptcy

The Debtor obtained order of the Bankruptcy Court permitting it to pay all pre-petition wages in the ordinary course of business, as well as interim and permanent orders to permit the use of cash collateral. The Debtor has operated the business continuously during the pendency of the Case.

## Chapter 7 Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a liquidation Chapter 7 of the Bankruptcy Code on the Confirmation Date. The Chapter 7 liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit A ("Liquidation Analysis"). The Liquidation Analysis was prepared by the Debtor's counsel.

## Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. *See* 11 U.S.C. § 1190.

The Debtor's financial projections prepared by the Debtor and attached as Exhibit B show that the Debtor will have total projected disposable income (as defined by Section 1191(d) of the Bankruptcy Code) for the 3-year period described in Section 1191(c)(2) of $219,695.41 (the "**Projected Disposable Income**"). **Regardless of the Projected Disposable Income on Exhibit B, the Debtor will only pay the Disposable Income actually generated from actual operations in full satisfaction of all Claims.**

The final Plan payment is expected to be paid 36 months after the initial Distribution Date of this Plan or when all Claims have been Allowed.

The Debtor has also made certain assumptions regarding labor, material, and fuel costs many of which have recently increased dramatically. Interest rates have been low for an extended period but are now possibly increasing. Therefore, changing economic conditions could affect the accuracy of the Debtor's projections. The projected amount of professional fees could

4

change depending on litigation over this Plan or Claims. The actual costs for these items could therefore be substantially different from the amounts projected on Exhibit B.

## ARTICLE II

## PLAN SUMMARY

This Plan of Reorganization proposes to pay the Allowed Claims of Creditors from the Disposable Income of the Reorganized Debtor. The Plan provides for one class of priority claims, four classes of secured claims, a class of general unsecured claims, and a convenience class of unsecured claims in allowed amounts under $1500. The Debtor has created the priority claims class as a placeholder, but believes that there are no priority creditors with unpaid claims and the class is therefore empty. Creditors holding allowed secured claims will be paid in full with interest over a period not exceeding three years. Creditors holding allowed unsecured claims will also be paid in full, but without interest, over a period not exceeding three years. Creditors in the unsecured convenience class with claims not exceeding $1500, or general unsecured creditors who elect to reduce their allowed claims to $1500, will be paid in full without interest within 30 days after the Effective Date of the Plan.

Creditors should refer to Articles III through V of this plan to determine the exact treatment proposed for their claims. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

5

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS

**Class I**      Class 1 consists of all allowed claims entitled to priority under Section 507(a) of the Bankruptcy Code except Administrative Expenses and Priority Tax Claims dealt with in Article IV below. The Debtor believes that this class of claims is currently empty and is likely to remain so.

**Class 2**      Class 2 consists of the Allowed Secured Claims of WebBank d/b/a Toast. The Debtor believes that by the time the Plan is confirmed and becomes effective, the Claim of WebBank will have been completely or substantially paid in the ordinary course of business as permitted under the Cash Collateral Order. Any remaining claim will be paid in the ordinary course of business. This claim is unimpaired and deemed to have accepted the Plan.

**Class 3**      Class 3 consists of the Disputed Secured Claim of Joseph and Cassie Ciresi. Any portion of this claim which becomes allowed will be subordinated to general unsecured status and treated as part of Class 6. Any portion of the claim which is disallowed will be entitled to no payment and will be discharged. This claim is impaired and entitled to vote.

**Class 4**      Class 4 consists of the Allowed Secured Claim of Rewards Network. This claim will be bifurcated into a secured portion and an unsecured portion pursuant to the provisions of Bankruptcy Code Section 506. The secured portion paid in full in approximately equal monthly installments within the 36 month period beginning in the first calendar month after the Effective Date, with interest at the rate of 9.5%. The unsecured portion will be treated as part of Class 6. This claim is impaired and is entitled to vote.

6

**Class 5**     Class 5 consists of the Claim of iPlan FBO Christian Carson. This claim will be bifurcated into a secured portion and an unsecured portion based on the dates various portions of the claim were perfected.. The secured portion paid in full in approximately equal monthly installments within the 36 month period beginning in the first calendar month after the Effective Date, with interest at the contract rate. The unsecured portion will be treated as part of Class 6. This claim is impaired and is entitled to vote.

**Class 6**     Class 6 consists of general unsecured claims exceeding $1500. Allowed claims in Class 6 will be each be paid their pro-rata share of the Debtor's disposable income in approximately equal monthly installments, without interest, within the 36 month period beginning with the first calendar month after the Effective Date. Claims classified in Class 6 are impaired and are entitled to vote.

**Class 7**     Class 7 consists of general unsecured claims in allowed amounts of $1500 or less, or claims which are voluntarily reduced to the allowed amount of $1500. Allowed claims in this class will be paid in full without interest during the first calendar month after the occurrence of the Effective Date. Claims in Class 7 are impaired and entitled to vote.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, and QUARTERLY AND COURT FEES

**Unclassified Claims**     Under Section 1123(a)(1), Allowed Administrative Expenses and Priority Tax Claims are not classified in Chapter 11 Plans.

**Administrative Expenses**     Administrative Expenses will be paid in full on the later of the Distribution Date or when such claim arises, in cash, or upon such other terms as may be agreed

upon by the holder of the claim and the Debtor. Administrative Expenses arising in the ordinary course of business after the Petition Date shall be paid in full by the Reorganized Debtor according to the terms of the obligation. The Debtor estimates that it will owe legal counsel approximately $40,000 in legal fees as of the Effective Date, and will owe an additional $5,000 in fees to the Subchapter V Trustee as of the Effective Date. These estimates are in addition to any interim payments made prior to the Effective Date.

**Allowed Priority Tax Claims**      The Debtor believes that there are no Allowed Priority Tax Claims.

**Statutory and Quarterly Fees**      Any fees imposed under 28 U.S.C. §1930 that are owed on the Effective Date will be paid on or before the Distribution Date. Under Subchapter V, Debtors are not currently required to pay quarterly fees. If such fees are reimposed, they will be timely paid.

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**Time for Objections to Claims**

All objections to Claims shall be filed on or before the first business day after the 120th day following the Effective Date.

**Delay of Distribution on Disputed Claims; Effect on Allowed Claims**

Except as otherwise provided in the Plan, no partial Plan payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution by Debtor of such dispute by settlement or Final Order. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not

8

receive a Distribution until such dispute is resolved by settlement or Final Order. The provisions

of this section are not intended to restrict payment of any unclassified claims or classified classes

of claims which are not disputed, but the amount of all distributions to all other Allowed Claims

in a Class will be calculated on the highest potential liability for each Disputed Claim in a Class

until resolved by settlement or Final Order. The Debtor or the Trustee will have the authority to

settle and compromise any Disputed Claim with Court Approval under the provisions of Federal

Rule of Bankruptcy Procedure 9019.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except for any executory contract or unexpired lease which has already been rejected

prior to the Effective Date, the Debtor assumes all executory contracts and unexpired leases as of

the Effective Date of the Plan.

## ARTICLE VII

## MEANS OF IMPLEMENTATION AND POST CONFIRMATION MANAGEMENT

### Ordinary Business Income

The Plan will be primarily implemented and funded through the revenue of the

Reorganized Debtor earned during the Plan Term. Recoveries from the Avoidance Actions, if

any, may be used to fund distributions under the Plan. As a part of its reorganization, the Debtor

does not contemplate the sale of any assets, however assets may be sold to the extent that it is

later determined they are no longer of value to the Reorganized Debtor's business operation or

their useful life for the Reorganized Debtor has expired.

9

### Future Financing

The Projected Disposable Income is not based on obtaining any third-party financing to implement the Plan but the Debtor, to the extent it is eligible for any funding or financial assistance, may seek such funding and/or assistance.

### Sale as a Going Concern or Sale of Assets

The Debtor may seek to sell its assets or any portion thereof. So long as such a sale produces the same amount of the Projected Disposable Income due under this Plan on or before the final date of this Plan, and all Allowed Claims under this Plan will be paid in full from the proceeds of such sale, no court approval of the sale or modification of this Plan shall be necessary. In the event the proposed sale will not pay all Allowed Claims in full the Debtor or the Trustee will seek court approval of such sale pursuant to 11 USC § 363.

### Prepayment of Claims

The Debtor or the Trustee may prepay any amount due or any Allowed Claim in whole or in part without penalty at any time after the Effective Date. Prepayments shall be applied first to interest actually due on the payment date and then to principal if the Debtor prepays any Claim subject to interest.

### Avoidance Actions

Any avoidance actions shall be commenced prior to the Effective Date.

### Post-Confirmation Management

Pursuant to 11 U.S.C. § 1129(a)(5), it is disclosed that the Debtor will be managed by Jason J. Dicks post-confirmation, and Mr. Dicks will initially draw a salary of $100,000 from the Reorganized debtor, which may be increased if post-confirmations operations warrant the increase.

10

# ARTICLE VIII

## CONFIRMATION OF THE PLAN

### Requirements for Confirmation

The Requirements for confirmation of the Plan are set forth in Sections 1126 and 1191 of the Bankruptcy Code.

### Votes Necessary for a Class to Accept a Plan

Voting on the Plan is tallied by Class. A Class of Claims accepts the Plan if both of the following occur: (i) the holders of more than one-half (1/2) of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan, and (ii) the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

**If no holder of a Claim in a Class of Claims eligible to vote in a particular Class timely submits a ballot to accept or reject the Plan and does not otherwise object to the Plan, then the applicable Class will be deemed to have voted to accept the Plan.**

### Cramdown Confirmation Request

If one or more impaired classes of Claims and Interests fails to accept the Plan under Section 1126 of the Code, and if all the applicable requirements of Section 1129(a) of the Code, other than Section 1129(a)(8), (10), and (15) have been satisfied, the Debtor requests that the Court confirm the Plan pursuant to the provisions of Sections 1129(b) and 1191(b) of the Code.

11

## ARTICLE IX

## DEFAULT

If the Debtor shall fail to pay any amount due under this Plan when due, or if there exists some other non-monetary default under this Plan and if either such default is not cured after filing Notice and attesting to the Default and serving Debtor's counsel, the Sub-Chapter V Trustee and the U.S. Trustee via email with a copy of the Notice of Default, the Debtor shall have thirty (30) days to cure the Default. If the Debtor fails to cure the default within thirty (30) days, then the US Trustee or any party in interest may move in the Bankruptcy Court (1) for the reappointment of the Trustee to take control of the Debtor and the Debtor's assets; or (2) conversion to Chapter 7 or dismissal of the Bankruptcy Case.

## ARTICLE X

## VESTING

All property of the estate will remain property of the Bankruptcy Estate and subject to the automatic stay under 11 U.S.C. §362 until the Court grants the Debtor a discharge, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. §§ 1141(b) and 1186, on granting of a Discharge, all property of the estate will vest in the Reorganized Debtor, except as otherwise provided in the Plan or the Confirmation Order.

Under 11 U.S.C. § 1141(c), on Confirmation of the Plan, all property of the Debtor dealt with in the Plan, tangible and intangible, including, without limitation, licenses, furniture, fixtures, and equipment, will be free and clear of all Claims and Equitable Interests of the Debtor, except as otherwise provided in the Plan or the Confirmation Order.

12

# ARTICLE XI

## GENERAL PROVISIONS

### Definitions and Rules of Construction

Certain terms are defined elsewhere in this Plan as indicated by being in parenthesis, in bold type, underlined and in quotation marks. The definitions and rules of construction outlined in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

**Administrative Claimant**: Any person entitled to payment of an Administrative Expense.

**Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under Section 503(b) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of reserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**Administrative Tax Claim**: Any tax incurred according to Section 503(b)(1)(B) of the Bankruptcy Code.

**Allowed Claim**: Except as otherwise specified in this Plan, any claim against the Debtor according to Section 502 of the Bankruptcy Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**Allowed Priority Claim**: An Allowed Claim entitled to priority under Section 507 (other than an Administrate Expense, Administrative Tax Claim, or an Allowed Priority Tax Claim) and not subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**Allowed Priority Tax Claim**: An Allowed Claim entitled to priority in payment under Section 507(a)(8) and not subject to subordination under Section 510 of the Bankruptcy Code reduced by

the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Effective Date.

**Allowed Secured Claim**: Except as otherwise specified in this Plan, Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under Section 506 of the Bankruptcy Code

**Allowed Unsecured Claim**: An Allowed Claim, that is not a Secured Claim and that is also not entitled to priority under Section 507 or subject to subordination under Section 510 of the Bankruptcy Code and reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

**Avoidance Action:** Any claim or cause of action arising under any Sections 544, 547 or 548 of the Bankruptcy Code such as fraudulent transfers, preference actions and the like.

**Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**Bankruptcy Court**: The United States Bankruptcy Court for the Northern District of Ohio.

**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**Bar Date.** The last day to timely file proofs of claim in this case as set by the Bankruptcy Court.

**Bankruptcy Case, Case or Chapter 11 Case.** The case in the Bankruptcy Court in which this Plan is filed: In re Pizzeria Management III LLC, Case No. 25-11334.

**Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**Class**: A category of holders of Claims or interests which are set forth in this Plan.

**Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided, however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

14

**Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan under the provisions of chapter 11 of the Bankruptcy Code.

**Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**Disallowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code that has been denied against the estate by a Final order; or for which no proof of claim has been Timely Filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Disposable Income**: Shall have that meaning ascribed to such term under Section 1191(d) of the Bankruptcy Code

**Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Bankruptcy Code for which: A proof of claim has been timely filed prior to the Bar Date or deemed filed, and the Debtor or another party in interest has filed an objection.

**Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**Distribution Date**: The first date after the Effective Date that a Distribution is made under the Plan to any holders of (1) Administrative Claims other than Administrative Claims accrued and paid in the ordinary course of the Debtor's business prior to the Effective Date, or (2) Priority Tax Claims, or (3) Allowed Claims in a particular Class in accordance with this Plan.

**Effective Date** The first business day that is 14 days after the Confirmation Order becomes a Final Order. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**Equity Interest**: An ownership interest in the Debtor.

**Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) at stay pending appeal is in place and any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**Petition Date**: March 31, 2025, the date the chapter 11 petition for relief was filed by the Debtor.

**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**Reorganized Debtor**: The Debtor after the Effective Date.

15

**Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**Section** a particular section of the Bankruptcy Code

**Trustee**: Patricia Fugee, the trustee appointed according to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the Confirmation Order.

**Timely Filed**: any proof claim or other document that was filed on or before the expiration of the time for such filing as specified by the Bankruptcy Code, the Bankruptcy Rules, the local rules or an order of the Bankruptcy Court.

**US Trustee**: The Office of the United States Trustee for Region IX or such successor office having responsibility for the Bankruptcy Case.

## Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## Binding effect

The rights and obligations of any person or entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such person or entity.

## Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## Controlling Effect

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

16

**Retention of Jurisdiction**

The Court shall retain jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**ARTICLE XII**

**DISCHARGE**

If the Debtor's Plan is confirmed under Section 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in Section 1141(d)(6).

If the Debtor's Plan is confirmed under Section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years or such other time not to exceed 5 years as the Court may fix of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan or such other time not to exceed 5 years fixed by the Court, or as otherwise provided in Section 1192.

Under this Plan the Debtor will be discharged under 1101(a) or (b) from all debts except for Allowed Claims in where any payment due extends beyond the final payment due under this

Plan which holder of Claims is those Classes shall have the right to seek payment against the Reorganized Debtor for the amount due them.

**ARTICLE XIII**

**REPORTING, PAYMENTS AND TRUSTEE OBLIGATIONS**

The Debtor shall make all Distributions to Creditors provided for in the Plan whether confirmed under Section 1192(a) or (b), and the following shall apply:

**U.S. Trustee Reporting**

The Debtor shall file with the court Quarterly Post Confirmation Operating Reports ("**Quarterly Reports**") as required by the U.S. Trustee no later than 20 days after the end of each quarter after the Effective Date or at such times as designated by the U.S. Trustee until all Distributions are completed under the Plan.

**Payments and Distributions to Disputed Claims**

Except as otherwise provided in the Plan, no partial Plan payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution by Debtor of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a Distribution until all claims within the applicable class are final. Unless otherwise agreed to by the Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims or classified classes of claims which are not disputed. The amount of any Distribution that would otherwise be due on a Disputed Claim shall be held in a designated distribution account pending final resolution of said Disputed Claim.

18

### Right to Accelerate Payment

The Debtor may pay any Allowed Claim prior to the projected payment date in whole or in full without penalty.

### Discharge of Trustee

If the Plan is confirmed pursuant to Section 1192(a) or (b) the Trustee will be discharged upon the filing of a notice of substantial consummation of the Plan, and the Trustee's filing of the appropriate trustee report with the Bankruptcy Court.

If the Plan is confirmed pursuant to Section 1192(a) or (b) and there is an Event of Default under the Plan the US Trustee may reappoint the Trustee and if so reappointed the Trustee shall be discharged upon completion of all Plan payments or other final administration of the case, and the Trustee should submit the final report and final account of the administration of the estate to the United States Trustee for review pursuant to section 1183(b)(1). After review, the final report and account will be filed with the Court and the Trustee will seek a discharge of her duties as Subchapter V Trustee.

### Post-Confirmation Fees and Expenses of the Subchapter V Trustee

The Trustee will not be required to obtain Court approval to pay such fees. Annually the Trustee will provide notice of the post confirmation costs utilizing the Court's negative notice procedures upon fourteen (14) days' notice to the Debtor, the Office of the United States Trustee, and all claimholders. In the event of any objection to the Trustee's fees, the Court shall retain jurisdiction to hear such dispute. Upon Court approval of the Trustee's fees and expenses, the Debtor shall pay any such unpaid fees and expenses no earlier than 14 business days after such Court Order. The Trustee's fees shall be an Administrative Claim and paid as payment of expenditures necessary for the continuation, preservation, or operation of the business of

the Debtor pursuant to Section 1191(d)(2) and thus deducted from the Debtor's income prior to the calculation of Disposable Income.

**Trustee Obligations Related to the Pursuit of Causes of Action or Disputed Claims**

Unless reappointed upon default, the Trustee shall not have any obligation to pursue or manage the Debtor's retained Causes of Action or Disputed Claims, which Causes of Action and Disputed Claims shall remain the sole obligation of the Debtor.

## ARTICLE XIV

## LENGTH OF PLAN

The Projected Disposable Income under this Plan shall be calculated over a period of 36 months, commencing on the initial Distribution Date. However, the Plan term shall be the earlier of (1) 36 months after the initial Distribution Date or (2) the final Distribution is made under the Plan.

## ARTICLE XV

## TAX CONSEQUENCES OF PLAN

The resulting tax consequences of the Plan may be complex, and the tax consequences of the Plan will depend upon certain factual determinations. No ruling has been or will, before the Effective Date, be requested from the Internal Revenue Service regarding the tax consequences of the Plan. No assets of the Debtor have been sold or transferred since the filing of this case and as a result, no tax consequences as to such assets have arisen since the filing of this case.

**BECAUSE THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND MAY VARY BASED ON INDIVIDUAL CIRCUMSTANCES THIS DISCLOSURE STATEMENT RENDERS NO TAX ADVICE ON THE TAX CONSEQUENCES OF THE IMPLEMENTATION OF THE PLAN TO ANY PARTICULAR CREDITOR, TO THE DEBTOR, OR TO INTEREST HOLDERS. EACH PARTY IS URGED TO CONSULT**

**HIS OR HER TAX ADVISOR AS TO THE TAX CONSEQUENCES OF THE PLAN TO HIM OR HER INCLUDING ANY CONSEQUENCES UNDER STATE OR LOCAL TAX LAWS**.

The following constitutes a summary of the potential tax consequences which may arise upon confirmation of the Plan.

### Tax Consequences to the Debtor

Under the Tax Code, a U.S. taxpayer generally must include in gross income the amount of any cancellation of indebtedness income ("COD Income") realized during the taxable year, which generally includes the amount of principal debt discharged and any interest that has been previously accrued and deducted for tax purposes but remains unpaid at the time the indebtedness is discharged. The Tax Code permits a debtor in bankruptcy to exclude his COD Income from gross income but requires the debtor to reduce certain tax attributes by the amount of the excluded COD income. The Debtor may realize a significant amount of COD income upon the consummation of the Plan. The Debtor will not be required to include COD Income in gross income because the indebtedness will be discharged while the Debtor is under the jurisdiction of a court in a Title 11 case.

### Certain U.S. Federal Income Tax Consequences to Holders of Claims and Equity Interests

The U.S. Federal Income Tax consequences to holders of allowed claims arising from the Distributions to be made in satisfaction of their claims under a bankruptcy plan of reorganization may vary, depending upon, among other things: (a) the type of consideration received by the holder of a claim in exchange for the indebtedness it holds; (b) the nature of the indebtedness owed to it; (c) whether the holder has previously claimed a bad debt or worthless security deduction in respect of its claim against the corporation; (d) whether such claim constitutes a security; (e) whether the holder of a claim is a citizen or resident of the United States for tax purposes, or otherwise subject to U.S. federal income tax on a net income basis; (f) whether the

21

holder of a claim reports income on the accrual or cash basis; and (g) whether the holder of a claim receives Distributions under the bankruptcy plan in more than one taxable year. For tax purposes, the modification of a claim may represent an exchange of the claim for a new claim, even though no actual transfer takes place. Also, where a gain or loss is recognized by the holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by several factors, including the tax status of the holder, whether the claim constitutes a capital asset in the hands of the holder and how long it has been held or is treated as having been held, whether the claim was acquired at a market discount, and whether and to what extent the holder previously claimed a bad debt deduction for the underlying claim.

### Internal Revenue Service Circular 230 Notice

To ensure compliance with Internal Revenue Service Circular 230, holders of Claims and Equity Interests are hereby notified that: (A) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims or Equity Interests to avoid penalties that may be imposed on them under the Internal Revenue Code; (B) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein, and (C) holders of Claims and Equity Interests should seek advice based on their particular circumstances from an independent tax advisor.

Respectfully submitted,

/s/Thomas W. Coffey
Thomas W. Coffey (0046877)
Coffey Law LLC
2430 Tremont Ave.
Cleveland, OH 544113
(216) 870-8866
tcoffey@tcoffeylaw.com

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

<u>**ASSET**</u>

| | |
|---|---|
| Cash in Bank Accounts (based on May 2025 Operating Report) | $49,477.11 |
| Security Deposit with Landlord | $ 6,371.00 |
| Inventory (Liquidation Value) | $ 5,000.00 |
| Restaurant Tables and Chairs (Liquidation Value) | $ 2,500.00 |
| Lights and Chandeliers | $   500.00 |
| TVs, Speakers, Sound System (Liquidation Value) | $ 3,500.00 |
| Rock and Roll Memorabilia and Décor | $ 5,000.00 |
| Kitchen and Bar Equipment (Liquidation Value) | <u>$25,000.00</u> |
| **TOTAL:** | $97,348.11 |
| LESS Trustee Commission* | <u>$ 8,117.41      </u> |
| **NET TO ESTATE, TOTAL** | **$89,230.70** |

- Trustee Commission Calculation (11 U.S.C. §326)

| | | |
|---|---|---|
| 25% of first $5,000 | $1250.00 | |
| 10% of next $45,000 | $4500.00 | |
| 5% of Remaining $47,348.11 | <u>$2,367.41</u> | |
| **Total** | **$8,117.41** | |

**EXHIBIT B**

**PROJECTED DISPOSABLE INCOME OVER THREE YEARS**

**(ATTACHED)**

25-11334-jps    Doc 59    FILED 06/30/25    ENTERED 06/30/25 22:34:35    Page 25 of 26

## Pizzeria Management III LLC Plan
### PROJECTIONS

| | 2025 | 2026 | 2027 | 2028 |
|---|---|---|---|---|
| | 7/1 - 12/31 | 1/1 - 12/31 | 1/1 - 12/31 | 1/1 - 6/30 |
| **INCOME AFTER SALES TAX** | $900,000.00 | $1,900,000.00 | $1,900,000.00 | $950,000.00 |
| LOCAL ADVERTISING | $9,000.00 | $19,000.00 | $19,000.00 | $9,500.00 |
| ZEPPE'S CORP ADVERTISING | $18,000.00 | $38,000.00 | $38,000.00 | $19,000.00 |
| ZEPPE'S FRANCHISE ROYALTIES | $36,000.00 | $76,000.00 | $76,000.00 | $38,000.00 |
| BUSINESS LICENSES | $3,494.18 | $4,619.68 | $4,619.68 | $1,125.50 |
| INSURANCE | $6,210.00 | $13,110.00 | $13,110.00 | $6,555.00 |
| LIVE MUSIC | $47,082.00 | $64,030.00 | $64,030.00 | $16,948.00 |
| MEALS | $1,050.30 | $2,217.30 | $2,217.30 | $1,108.65 |
| PAYROLL PREPARATION | $810.00 | $1,710.00 | $1,710.00 | $855.00 |
| PAYROLL EXPENSES (including tax) | $265,500.00 | $560,500.00 | $560,500.00 | $280,250.00 |
| GROSS OWNER SALARY | $54,000.00 | $108,000.00 | $108,000.00 | $54,000.00 |
| RENT | $34,500.00 | $69,000.00 | $69,000.00 | $34,500.00 |
| LEASE C.A.M. CHARGES | $8,862.00 | $17,724.00 | $17,724.00 | $8,862.00 |
| REPAIRS AND MAINTENANCE | $13,500.00 | $28,500.00 | $28,500.00 | $14,250.00 |
| SOFTWARE SUPPORT AND POS FEES | $4,680.00 | $9,880.00 | $9,880.00 | $4,940.00 |
| MISC SUPPLIES (office, towels, plateware,menus, etc) | $12,060.00 | $25,460.00 | $25,460.00 | $12,730.00 |
| BAR SUPPLIES | $93,600.00 | $197,600.00 | $197,600.00 | $98,800.00 |
| FOOD SUPPLIES | $225,450.00 | $475,950.00 | $475,950.00 | $237,975.00 |
| CAT TAX | $0.00 | $0.00 | $0.00 | $0.00 |
| TAX PREPARATION | $600.00 | $600.00 | $600.00 | $600.00 |
| TOAST CREDIT CARD PROCESSING | $16,200.00 | $34,200.00 | $34,200.00 | $17,100.00 |
| UTILITIES | $30,330.00 | $64,030.00 | $64,030.00 | $32,015.00 |
| PROFESSIONAL FEES (legal) | $18,000.00 | $22,000.00 | $0.00 | $0.00 |
| **TOTAL EXPENSES** | $898,928.48 | $1,832,130.98 | $1,810,130.98 | $889,114.15 |
| **TOTAL INCOME** | **$1,071.52** | **$67,869.02** | **$89,869.02** | **$60,885.85** |
| **TOTAL 3 YEAR INCOME** | | **$219,695.41** | | |