IN RE:

PIZZERIA MANAGEMENT III LLC,

Debtor.

CASE NO. 25-11334

CHAPTER 11

SUBCHAPTER V

JUDGE JESSICA PRICE SMITH

## MOTION TO CONVERT OR DISMISS CASE

Now come creditors Joesph T. Ciresi, Cassie Ciresi, and Zeppe's Tavern Franchise LLC (collectively, the "Zeppe's Parties"), by and through their undersigned counsel, and hereby submit this *Motion to Convert or Dismiss Case* (the "Motion") requesting an Order from this Court converting this case to Chapter 7 or dismissing the case, whichever is in the best interest of creditors. In support of this Motion, the Zeppe's Parties state as follows:

## BACKGROUND FACTS

1. On March 31, 2025 (the "Petition Date"), Pizzeria Management III LLC ("PMIII" or "Debtor") filed a voluntary petition for relief under Subchapter V of Title 11 of the United States Code (the "Bankruptcy Code").

2. On June 30, 2025, PMIII filed its first proposed plan of reorganization [Docket No. 59], which drew objections from the United States Trustee [Docket No. 80], iPlan Group FBO Christian Carson ("Carson") [Docket No. 82], and the Zeppe's Parties [Docket No. 83].

3. On November 20, 2025, PMIII filed its Amended Plan, with the Zeppe's Parties filing the Objection.

4.     Contemporaneously with this Motion, the Zeppe's Parties filed the *Supplemental Objection to Confirmation of Amended Plan of Reorganization [Docket No. 90]* (the "Supplemental Objection"), which supplemented the *Objection of Joseph T. Ciresi, Cassie Ciresi and Zeppe's Tavern Franchise LLC to Confirmation of Debtor's Amended Plan of Reorganization* (the "Objection") [Docket No. 109]. The Zeppe's Parties incorporate the Supplemental Objection and the Objection as if fully rewritten herein.

5.     The individual that is operating PMIII, Jason Dicks ("Dicks"), has filed a separate petition under Subchapter V, Case Number 25-11336 ("Dicks Case"). The Zeppe's Parties have filed an objection to confirmation to Dicks' most recent plan of reorganization in the Dicks Case (the "Dicks Objection"), and have filed a motion to convert or dismiss the Dicks Case.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409. Section 1112 of the Bankruptcy Code and Rule and Federal Rules of Bankruptcy Procedure 1017 and 1019.

## LEGAL ARGUMENT

### I. CAUSE FOR CONVERSION OR DISMISSAL

7.     The Bankruptcy Code establishes that the Court shall convert a case to Chapter 7 or dismiss a Chapter 11 case, whichever is in the best interests of creditors and the estate for "cause". *See*, 11 U.S.C. § 1112(b)(1).

8.     Section 1112(b)(4) includes a nonexclusive list of grounds which may constitute "cause" for dismissal or conversion, and the Court may find non-statutory bases for dismissing or converting a case as well. *In re Lashley*, 664 B.R. 408, 414 (Bankr. W.D. Ky. 2024); *see also*, *In re S-Tek 1, LLC*, 2023 Bankr. LEXIS, *21 (Bankr. D.N.M. 2023) (even though not specifically

2

enumerated, a debtor's inability to confirm a plan within a reasonable time constitutes "cause" under § 1112(b)).

9. "Cause" may include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. *See*, 11 U.S.C. § 1112(b)(4)(A); *In re Exigent Landscaping, LLC*, 656 B.R. 757, 765 (Bankr. E.D. Mich. 2024).

10. In order to demonstrate that cause exists to dismiss or convert a case pursuant to section 1112(b)(4)(A), the moving party must demonstrate that there is both (1) a continuing loss to or diminution of estate assets and (2) an absence of a reasonable likelihood of rehabilitation. *Id.* (citing, *In re Westgate Props., Ltd.,* 432 B.R. 720, 723 (Bankr. N.D. Ohio).

11. To satisfy the first prong, the movant must demonstrate that debtor continues to incur losses or maintains a negative cash flow position after the entry of the order for relief. *Exigent Landscaping, LLC*, 656 B.R. at 765.

12. To satisfy the second prong, the movant must demonstrate that the debtor does not have a reasonable likelihood of rehabilitation. *Id.* at 765-66. Rehabilitation does not necessarily mean reorganization, instead it signifies something more and is more demanding than reorganization, akin to the debtor being re-established on a firm and sound basis. *Id.* at 766.

13. To find that there is a reasonable likelihood of rehabilitation, it must be demonstrated that debtor will be able to stem the occurring losses and place the business back on solid financial footing within a reasonable amount of time. *Id.*

14. As articulated in the Supplemental Objection, Debtor has incurred a significant negative cash flow position during the pendency of the case and is $45,492.27 in the red. This demonstrates the continuing loss to the estate. *See*, *Id.* at 768 (United States Trustee met its burden

3

of showing continuing loss to the estate where debtor had negative net cash flow since the petition date).

15.    Further, there is not a reasonable likelihood of rehabilitation as articulated in the Dicks Objection and the Supplemental Objection.  The Lease under which PMIII operates has been rejected, and the Franchise Agreement cannot be assumed by Dicks nor assigned to PMIII.

16.    Therefore, there is sufficient "cause" to convert or dismiss this proceeding and there are no unusual circumstances present that render conversion or dismissal to not be in the best interest of the estate or creditors under section 1112(b)(2).

## II. CONVERSION OR DISMISSAL

17.    There is no bright line test to determine whether conversion or dismissal is in the best interests of the estate and is left to the sound discretion of the Court. *Id.* at 774.

18.    Typically, the best course of action is the one that results in the largest number of creditors being paid the largest amount of money in the shortest amount of time, and the best interest of the estate depends on whether its economic value is greater in or out of bankruptcy. *Id.* (quoting, *In re Aurora Memory Care, LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018).

19.    The Liquidation Analysis attached to the Amended Plan lists the value available to creditors, after consideration of liens, exemptions, and a Chapter 7 trustee's statutory fee as $89,230.70.

20.    There are assets that would be available to PMIII's creditors in a Chapter 7 liquidation, but as this decision is within the sound discretion of the Court, the Zeppe's Parties respectfully ask the Court to decide as to the proper outcome of this case.

4

**CONCLUSION**

WHEREFORE, the Zeppe's Parties respectfully request that this Court enter an Order dismissing or converting PMIII's case to Chapter 7, whichever is in the best interest of creditors and any other just relief.

Dated: April 6, 2026                                    Respectfully submitted,


                                                       /s/  John J. Rutter
                                                       John J. Rutter (0079186)
                                                       Christopher M. Millard (0105607)
                                                       Roetzel & Andress, LPA
                                                       222 South Main Street, Suite 400
                                                       Akron, OH  44308
                                                       Phone: (330) 376-2700
                                                       Fax: (330) 376-4577
                                                       jrutter@ralaw.com
                                                       cmillard@ralaw.com

                                                       *Attorneys for the Zeppe's Parties*