| | |
|---|---|
| IN RE: | CASE NO.   25-11334 |
| PIZZERIA MANAGEMENT III LLC, | CHAPTER   11 |
| Debtor. | SUBCHAPTER V |
| | JUDGE JESSICA PRICE SMITH |

## SUPPLEMENTAL OBJECTION TO CONFIRMATION OF AMENDED PLAN OF REORGANIZATION [DOCKET NO. 90]

Now come creditors Joesph T. Ciresi, Cassie Ciresi, and Zeppe's Tavern Franchise LLC (collectively, the "Zeppe's Parties"), by and through their undersigned counsel, and hereby submit this supplemental Objection (the "Supplemental Objection") to the *Objection of Joesph T. Ciresi, Cassie Ciresi and Zeppe's Tavern Franchise LLC to Confirmation of Debtor's Amended Plan of Reorganization* (the "Objection") [Docket No. 109] to the *Debtor's Amended Plan of Reorganization* (the "Amended Plan") [Docket No. 90] filed by Debtor Pizzeria Management III LLC ("PMIII" or "Debtor"). All factual assertions and legal arguments in the Objection are hereby incorporated into this Supplemental Objection. In support of the Objection and the Supplemental Objection the Zeppe's Parties submit as follows:

### BACKGROUND FACTS

1.      On March 31, 2025 (the "Petition Date"), PMIII filed a voluntary petition for relief under Subchapter V of the Bankruptcy Code. On the same date, Jason Dicks ("Dicks") filed a voluntary petition for relief under Subchapter V of the Bankruptcy Code, Case Number 25-11336 (the "Dicks Case").

2. On June 30, 2025, PMIII filed its first proposed plan of reorganization [Docket No. 59], which drew objections from the United States Trustee [Docket No. 80], iPlan Group FBO Christian Carson ("Carson") [Docket No. 82], and the Zeppe's Parties [Docket No. 83].

3. On November 20, 2025, PMIII filed its Amended Plan, with the Zeppe's Parties filing the Objection.

4. On January 20, 2026, PM 3 filed the *Certification of Acceptances and Rejections with Respect to Debtor's Amended Plan of Reorganization* (the "Voting Certification") [Docket No. 108]. The Voting Certification indicates that Class 3 and Class 6, both of which are comprised of claims held by Joesph and Cassie Ciresi,[1] voted to reject the Plan.

5. As the Objection reserved all rights to object to other deficiencies at the hearing on confirmation, and this Court entered an Order continuing the hearing on confirmation to June 9, 2026, the Zeppe's Parties hereby submit this Supplemental Objection. *See*, Objection ¶ 20; *Order Rescheduling Confirmation Hearing* [Docket No. 118].

6. In support of confirmation of the Amended Plan, and in response to objections raised by parties in this bankruptcy case, PMIII filed the *Brief in Support of Confirmation of the Debtor's Amended Plan of Reorganization* (the "Brief") [Docket No. 111].

7. Contemporaneously with this Supplemental Objection, the Zeppe's Parties are filing the *Objection to Confirmation of Jason Dicks's Plan of Reorganization Dated February 23, 2026* (the "Dicks Objection") in the Dicks Case.

---

[1] The Voting Certification indicates that there are two separate Class 6 claims: those held by iPlan Group FBA Christian Carson IRA and Joesph and Cassie Ciresi. Class 6 of the Amended Plan deals with the treatment of general unsecured claims exceeding $1,500. This language in the Voting Certification is presumably a typographical error.

# LEGAL ARGUMENT

## I. PLAN IS NOT FAIR AND EQUITABLE

8. The Amended Plan provides for payment of only PMIII's actual income generated during the length of the Plan and not its Projected Disposable Income, as defined by 11 U.S.C. § 1191(d). *See*, Amended Plan, p. 6 ("**Regardless of the Projected Disposable Income on Exhibit B, the Debtor will only pay the Disposable Income actually generate from actual operations in full satisfaction of all Claims**") (emphasis in original); p. 9 ("Allowed claims in Class 6 will be each be paid their pro-rata share of the Debtor's disposable income…").

9. As the Voting Certification demonstrates, more than one impaired class of claims has voted to reject confirmation of the Amended Plan. Therefore, PMIII must proceed to "cram" confirmation pursuant to section 1191(b), and the applicable provisions in section 1129(b).

10. The Zeppe's Parties are impacted and have standing to challenge this alleged treatment of Class 6 because of Debtor's treatment of any claims held by the Zeppe's Parties. *See*, Amended Plan, p. 8 ("To the extent that the [Class 3] claim [held by Joesph and Cassie Ciresi] is allowed as an unsure claim, it will be paid its pro-rata share of the Debtor's disposable income…"); p. 9 (the Debtor estimates the Class 6 claims include claims held by Zeppe's Tavern Franchise LLC).[2]

11. In order to confirm a Subchapter V plan over objection, the Court must find that the plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired under and has not accepted the plan. *See,* 11 U.S.C. § 1191(b).

---

[2] This is not an admission as to the validity and correctness of this treatment of the claims held by Zeppe Parties in this case.

12. In order to be "fair and equitable," the Amended Plan must pay, pledge to pay, or distribute to creditors at least $219,695.41, which is the disclosed Projected Disposable Income of PMIII. *See, In re Premier Glass Servs., LLC,* 664 B.R. 465, 471 (Bankr. N.D. Ill. 2024) ("***[i]f the debtor's actual income is lower than projected, the debtor must nonetheless pay the full amount as projected in the plan***") (*emphasis added*); *In re Nelkin & Nelkin P.C.*, 662 B.R. 550, 565 (Bankr. S.D. Tex. 2024) ("In other words, a plan must commit the debtor's projected disposable income or pledge other payments having a present value of at least that amount") (citing, *Legal Serv. Bureau, Inc. v. Orange Cty. Bail Bonds, Inc. (In re Orange Cty. Bail Bonds, Inc.)*, 638 B.R. 137, 146 (B.A.P. 9th Cir. 2022)); *In re Packet Constr., LLC*, 672 B.R. 905, 910 (Bankr. W.D. Tex. 2024).

13. PMIII's monthly operating reports filed for this case demonstrate that its actual disposable income, without considering issues related to the Franchise Agreement and the Lease detailed in the Dicks Objection, prevents PMIII from contributing and amount at least equal to its Projected Disposable Income:

| | |
|---|---|
| April 2025 [Docket No. 55] | ($16,226.22) |
| May 2025 [Docket No. 58] | ($11,065.10) |
| June 2025 [Docket No. 67] | $15,568.05 |
| July 2025 [Docket No. 77] | ($ 8,398.20) |
| August 2025 [Docket No. 78] | ($ 8,804.58) |
| September 2025 [Docket No. 89] | ($ 8,001.74) |
| October 2025 [Docket No. 95] | $ 474.95 |
| November 2025 [Docket No. 106] | ($ 7,035.16) |
| December 2025 [Docket No. 110] | $ 3,162.38 |
| January 2026 [Docket No. 113] | ($ 8,509.36) |
| February 2026 [Docket No. 120] | $ 3,342.71 |
| *Net Loss* | *($45,492.27)* |

14. The Amended Plan alternatively proposes that PMIII may sell its assets or any portion thereof if the sale produces the same amount as its Projected Disposable Income, presumably through a post confirmation sale. *See*, Amended Plan, p. 13. As the amount available

4

to creditors through the liquidation of all of PMIII's assets is just $89,230.70, PMIII has no means to properly fund the Amended Plan and provide the amount necessary to confirm a plan. *See*, Amended Plan, Exhibit A.

**II. PLAN IS NOT FEASIBLE**

15. In order for a Subchapter V plan to be feasible it requires either: the debtor will be able to make the plan payments; or there is a reasonable likelihood that the debtor will be able to make all payments under the plan and there are appropriate remedies in the event that payments are not made. *See*, 11 U.S.C. § 1191(c)(3)(A) & (B).

16. The Brief, in response to feasibility arguments raised by the Objection, states that the Franchise Agreement is between the Zeppe's Parties and Dicks, that PMIII is not a party, and that treatment of the Franchise Agreement is properly handled through the Dicks case.

17. Even if true, the Zeppe's Parties have raised several issues related to the Franchise Agreement in the Dicks Objection. Namely, that the Franchise Agreement cannot be assumed and cannot be assigned.

18. Further, the Lease is terminated as a matter of law. PMIII has not moved to assume the Lease, and therefore it is automatically rejected.

19. The Amended Plan states, "Except for any executory contract or unexpired lease which has been the subject of a Motion to Reject it prior to the Effective Date, the Debtor assumes all executory contracts and unexpired leases as of the Effective Date of the [Amended] Plan." *See*, Amended Plan, Article VI.

20. In a Subchapter V case, an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the debtor shall immediately surrender that nonresidential real property to the lessor, if the debtor does not assume or reject the unexpired

5

lease by the earlier of: 120 days after the date of filing the petition; or the date of entry of an order confirming a plan. *See*, 11 U.S.C. § 365(d)(4)(A). This section applies in Subchapter V cases. *See, In re Ashmark Construction, LLC,* unreported, case number 25-46693, 2025 WL 2993222 (Bankr. E.D. Mich. 2025) (Subchapter V debtor's motion to extend deadline to assume or reject a non-residential real property lease rejected); *In re Vital Pharms., Inc.*, 651 B.R. 847, 852 (Bankr. S.D. Fla. 2023) (Chapter 11 cases that do not elect to proceed under Subchapter V are not entitled to the extension to 210-day period, rather than a 120-day period, to assume or reject a lease as that extension only applied to Subchapter V bankruptcies filed before December 27, 2022).

21.     The Petition Date for this case is March 31, 2025. The 120-day period during which PMIII was required to assume the Lease ended on July 29, 2025, and therefore the Lease is rejected as a matter of law.

22.     PMIII offers no alternative funding or operations necessary to fund the Amended Plan if the Franchise Agreement is rejected/not assumable and the Lease has terminated.

23.     Further the Lease Amendment and the Landlord Agreement require that the Premises be "used solely for the operation of a Zeppe's Tavern & Pizzeria business". *See*, Landlord Agreement, ¶ 10. These matters must be determined prior to confirmation of the Amended Plan. *See*, *Busch Law Firm, LLC v. Frontline Med. Servs. LLC (In re Frontline Med. Servs. LLC)*, 665 B.R. 818, 831 (B.A.P. 10th Cir. 2024) (the requirement of feasibility in section 1191(c) must be determined and present at the time of confirmation); *In re Trinity Family Practice & Urgent Care PLLC*, 661 B.R. 793, 816 (Bankr. W.D. Tex. 2024) (meeting the requirements of section 1191(c) is a necessary condition to confirmation of a Subchapter V plan); *In re Samurai Martial Sports, Inc.*, 644 B.R. 667, 695 (Bankr. S.D. Tex. 2022) ("[t]o confirm a plan, the bankruptcy court must make a specific finding that the plan as proposed is feasible").

24. As noted above, the Amended Plan does not offer a reasonable likelihood that payments under the Amended Plan will be made, and there are no appropriate remedies available to make plan payments, as the value of the non-exempt assets on liquidation are far less than PMIII's Projected Disposable Income.

**CONCLUSION**

WHEREFORE, the Zeppe's Parties respectfully requests that the Court deny confirmation of the Amended Plan for the reasons set forth in the Objection and this Supplemental Objection, and grant any such other just relief as is warranted under the circumstances. Contemporaneously with this Supplemental Objection, the Zeppe's Parties will be filing the *Motion to Convert or Dismiss Case*, requesting that this Court enter an Order converting this case to Chapter 7 or dismissing this case, whichever is in the best interest of creditors and the estate.

Dated: April 6, 2026                              Respectfully submitted,


                                                  */s/ John J. Rutter*
                                                  John J. Rutter (0079186)
                                                  Christopher M. Millard (0105607)
                                                  Roetzel & Andress, LPA
                                                  222 South Main Street, Suite 400
                                                  Akron, OH  44308
                                                  Phone: (330) 376-2700
                                                  Fax: (330) 376-4577
                                                  jrutter@ralaw.com
                                                  cmillard@ralaw.com

                                                  *Attorneys for the Zeppe's Parties*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2026, a true and correct copy of the *Supplemental Objection to Confirmation of Amended Plan of Reorganization [Docket No. 90]*, was served upon the following in the manner indicated:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

- **Christian E Carson**    christian@carsonlaw.com
- **Thomas W. Coffey**    tcoffey@tcoffeylaw.com, nbeba@tcoffeylaw.com
- **Patricia B. Fugee**    patricia.fugee@fisherbroyles.com, cpbf11@trustesolutions.net
- **Spencer Lutz**    spencer.lutz@usdoj.gov
- **John J. Rutter**    jrutter@ralaw.com
- **Frederic P. Schwieg**    fschwieg@schwieglaw.com
- **United States Trustee**    (Registered address)@usdoj.gov

*/s/ John J. Rutter*
John J. Rutter (0079186)
